427 So.2d 973 (1983)
Lula Grisham THOMPSON
v.
FIRST MISSISSIPPI NATIONAL BANK AND MUTUAL SAVINGS LIFE INS. CO.
No. 54103.
Supreme Court of Mississippi.
March 9, 1983.
*974 Lynda Carol Robinson, Jackson, for appellant.
Stennett, Wilkinson & Ward, Leigh H. Patterson, Shelby R. Rogers, Jr., Hobbs & Brand, Marc Brand, Jackson, for appellee.
Before WALKER, ROY NOBLE LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Lula Grisham Thompson, plaintiff below and appellant here, filed her complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi. She has named as defendants, First Mississippi National Bank (Bank) and Mutual Savings Life Insurance Company (Mutual Savings), both of whom are appellees here. In her complaint, plaintiff has alleged she and her husband, W.J. Thompson, Jr., obtained a loan from the Bank in the amount of some $40,000.00 on October 24, 1975, and that this loan was covered by credit life insurance procured by the Bank and issued by Mutual Savings.
Again according to the allegations, on December 19, 1975, W.J. Thompson, Jr. was hospitalized with an illness. On that date Lula Grisham Thompson alleges that she went to the Bank to renew the note and that at that time she tendered to the Bank a sum sufficient to cover a renewal of the credit life insurance policy. This sum was accepted by the Bank. Four days later, W.J. Thompson, Jr. died.
Under the circumstances, Lula Grisham Thompson charges that Mutual Savings had obligated itself to insure the life of W.J. Thompson, Jr. to the extent of the indebtedness owed by the Thompsons to the Bank as aforesaid, and that Mutual Savings has failed and refused to honor its insurance agreement. In the alternative, the complaint alleges that the Bank obligated itself to procure credit insurance on the life of W.J. Thompson, Jr., that it accepted the premium tendered by plaintiff, and that it has failed and neglected to obtain the insurance, as the result of which the debt should be cancelled and discharged. The complaint as alleged seeks both actual and punitive damages.
After not inconsiderable pretrial manuevering, the Bank filed a motion to transfer *975 the case to Chancery Court. As grounds for transfer the Bank asserted that the case involved a complicated accounting which would be beyond the ken of the average juror.[1] Thereafter on July 22, 1981, the Circuit Court sustained the motion for transfer and ordered the entire action transferred to the Chancery Court of the First Judicial District of Hinds County, Mississippi "including the issue of punitive damages."
After transfer, plaintiff filed no further pleadings. In due course, defendants moved to dismiss, citing Miss. Code Ann. § 11-1-39 (1972).[2] After a hearing the Chancery Court dismissed the complaint with prejudice.
Plaintiff, Lula Grisham Thompson, has perfected her appeal from this final order of dismissal. For the reasons set forth below, we reverse.

II.
The defect in the proceedings below was entry of the order for transfer by the Circuit Court. That order was erroneous for two reasons.

A.
The complaint clearly stated a claim against the defendants for punitive damages. This Court has repeatedly held that chancery courts do not have the power to award punitive damages. E.g., Monsanto Company v. Cochran, 254 Miss. 399, 404-405, 180 So.2d 624, 626 (1965); Subscribers Casualty Reciprical Exchange v. Totaro, 370 So.2d 1342 (Miss. 1979). In spite of this, on July 22, 1981, the circuit court ordered transfer to chancery court of all aspects of the case "including the issue of punitive damages." The circuit court, of course, had no power to confer upon the chancery court the power to hear punitive damage claims. Accordingly, the transfer order was in error.
There is precedent in this state for a procedure under which the circuit court may (a) transfer the substance of the case to the chancery court, (b) retain jurisdiction over the punitive damages issue in the circuit court, (c) stay all proceedings in the punitive damages issue until the rest of the case has been adjudicated in the chancery court and (d) once (and if) the chancery court has ruled in favor of plaintiff, submit the punitive damages issue to a jury in the circuit court. See M.T. Reed Construction Co. v. Nicholas Acoustics and Specialty Co., 379 So.2d 308 (Miss. 1980) and 387 So.2d 98 (Miss. 1980). Had this procedure been employed here, such would have been within the discretion of the circuit judge and this Court would not reverse, absent some strong counterveiling circumstances.
What is important for present purposes is that the circuit judge did not employ the procedure "tolerated" in the Reed case. We use the word "tolerated" because we view the Reed procedure as an extremely inefficient one. It is well established that, where there is in a case one issue of exclusive equity cognizance, such an issue can bring the entire case within subject matter jurisdiction of the chancery court and that court may proceed to adjudicate all legal issues as well. See Griffith, Mississippi Chancery Practice, § 28 (2d Ed. 1950). Notions of judicial efficiency and complete adjudication of a single lawsuit in *976 one court, minimization of trouble and expense to the litigants, etc., undergird such a rule. By the same token, where there is in the case one issue of exclusive law cognizance (e.g., the punitive damages issue), the circuit court may in its discretion retain jurisdiction and hear the entire cause, even though there may be other issues which arguably fall within chancery court subject matter jurisdiction.[3] This is the course that ought to have been followed in this case.

B.
The transfer order was also in error in that it operated to deprive plaintiff of her right to trial by jury secured by Mississippi Constitution, Art. 3, § 31 (1890). The circuit courts of this state should give strict scrutiny to a transfer movant's denomination of a claim as one involving a complicated accounting. Suffice it to say that it is the substance of the action that should be controlling on this issue, not its form or label. The circuit court should be wary of attempts to camouflage as a complicated accounting what is in essence an action at law for breach of contract. See Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962).
Accordingly, in addition to denying plaintiff a substantive right, i.e., the right to litigate her claim for punitive damages, the transfer order was erroneous in that it operated to deny plaintiff the right to trial by jury.

III.
Finally, we confront the question of whether or not reversal here is precluded under Section 147 of the Mississippi Constitution of 1890. To be sure, reversal would not be authorized solely on the grounds that plaintiff has been denied right to trial by jury. Talbot & Higgins Lumber Co. v. McLeod Lumber Co., 147 Miss. 186, 113 So. 433 (1927). Our cases precluding reversal in the context of the right to trial by jury issue have by no means attempted to denigrate the importance and status of that right. They recognize that it is a right declared by our Constitution to be preserved "inviolate" and that in such cases the chancery courts erred assuming jurisdiction. See McLean v. Green, 352 So.2d 1312, 1314 (Miss. 1977).
Here in addition to depriving plaintiff of her right to trial by jury, there are present two other factors militating in favor of reversal. First, plaintiff was denied substantive rights by the transfer. Where after transfer a litigant is denied a substantive right he would have enjoyed in the transferor court, Section 147 does not preclude reversal. Warner v. Hogin, 148 Miss. 562, 567, 114 So. 347, 348 (1927).
Second, this case has not been tried on its merits. One of the major purposes of Section 147 is to prevent reversal in situations where litigants have gone to all of the time, trouble and expense of trial on the merits, only to have this Court on appeal hold that trial was held in the wrong court. The policy underlying Section 147's preclusion on reversal has far less force in this case than it would have if plaintiff were appealing an adverse judgment after trial on the merits.
In summary, we hold that the circuit court's transfer of the issue of punitive damages denied plaintiff an opportunity to litigate an important substantive right. This was an error other than as to jurisdiction within the meaning of Section 147. Accordingly, the judgment entered below is reversed and this case is remanded to the circuit court for trial on the merits. See Robertson v. Evans, 400 So.2d 1214 (Miss. 1981). The parties, of course, are free to waive trial by jury if for any reason they *977 wish to do so. Under Section 31 of our Constitution, however, if either party insists on trial by jury she or it is so entitled.
REVERSED AND REMANDED TO THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY, MISSISSIPPI FOR TRIAL ON THE MERITS.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS and PRATHER, JJ., concur.
DAN M. LEE, J., takes no part.
NOTES
[1] The only thing complicated about this case is the pleadings. In fact plaintiff's pleadings, both the original and the two amended varieties, are so complicated ("convoluted" might be a more appropriate word) that on first impression they seem indecipherable. Upon reflection we think the case boils down to the simple claim outlined above.
[2] Miss. Code Ann. § 11-1-39 (1972) provides:

When the papers have been deposited in the court to which the cause was transferred, all the parties to the proceeding shall take notice of the fact of the transfer; and the complainant or plaintiff shall file his declaration or bill in the court to which the cause was transferred within thirty days, unless the court, judge, or chancellor shall restrict the time or grant further time; and the defendant shall plead within thirty days thereafter, unless the time, by like means, be restricted or extended. And the cause shall be proceeded with as if it had been originally begun in that court, as of the date on which the cause was originally instituted.
[3] Nothing in this opinion should be construed to suggest that every plaintiff may, by asserting a claim for punitive damages however frivolous, insulate his otherwise transferable case from transfer to chancery court. Like other claims a demand for punitive damages may be tested, first, on a motion for partial dismissal under Rule 12(b)(6), M.R.Civ.P., and second, on a motion for partial summary judgment under Rule 56. If the punitive damages issue for any reason is removed from the case, and if the case is otherwise one that ought to be transferred, on proper motion transfer should be ordered.